PATRICK KEIGHER v. CITY OF ST. PAUL.[1]

June 23, 1897.

Nos. 10,517—(198).

Application of Payments—Moran v. City, 65 Minn. 300, Followed.

*Held*, that the evidence justified the court in finding that certain payments were made generally on account. and not specially made and received in extinguishment of the principal of the debt. Moran v. City, 65 Minn. 300, followed.

Municipal Corporation—Street Sprinkling—Local Assessment.

By the terms of certain street-sprinkling contracts, the amount of work to be done, and consequently of compensation to be paid, were not definitely fixed, and could not be ascertained until the end of the sprinkling season. These contracts were payable only out of the proceeds of assessments to be made for that purpose. *Held*, that the board of public

1 Reported in 72 N. W. 54.

works was not required to make monthly assessments to pay for the work, but might wait until the work was completed, and then make one assessment for its entire cost; also, that it was an implied term of the contracts that the city should have a reasonable time after the completion of the work in which to make and collect such assessment, and that, until the expiration of such reasonable time, the contractor was not entitled to interest, as damages for the nonpayment of the contract price.

Appeal by each party from an order of the district court for Ramsey county, Otis, J., denying its motion for a new trial. Affirmed on both appeals.

*Warren H. Mead,* for plaintiff.

*James E. Markham* and *Hermon W. Phillips,* for defendant.

MITCHELL, J.

This is an action to recover balances alleged to be due on three street-sprinkling contracts. The price to be paid by the city was a specified sum per week for each hundred feet sprinkled. By the terms of the contracts, the plaintiff was to sprinkle the streets within the specified districts until November 15 next ensuing, unless otherwise ordered. He was to cease work upon any street or portion thereof when ordered by the common council, and was to be paid for only such time as the street was sprinkled. In all other respects material to these appeals the contracts were identical in their terms and conditions with the one considered and construed in Moran v. City, 65 Minn. 300, 67 N. W. 1000. As in the Moran case, as the work progressed, monthly "estimates" were granted to the plaintiff, showing the amount of sprinkling done for the month, and the amount due therefor, less the 15 per cent. reserved; and when the contracts were completed in November, the balance due the plaintiff, including the 15 per cent. reserved on former estimates, was audited and allowed. The trial court held that the city was not required to commence any assessment proceedings to secure a fund to pay for the sprinkling of any year until November 15, when the contract expired, and that it was entitled to a reasonable time thereafter (which he found was until April 1 following) in which to make and collect these assessments before the plaintiff could legally demand his pay, and before he would be entitled to interest on the

amount remaining unpaid.     The city does not complain of this ruling.

After April 1 of the respective years (the dates at which the court held that plaintiff was entitled to demand his pay), from time to time, as money came into the city treasury applicable to the payment of these sprinkling contracts, orders on the city treasurer were issued to the plaintiff, which on their face stated that they were on account of some particular one of the "estimates" already referred to.     There was no evidence of any agreement of the parties, express or implied, as to how these payments should be applied, unless it is to be found in the fact that each order stated on its face that it was on account of a particular estimate, and the further fact that the amount of the orders issued on two of the contracts respectively amounted to the exact amount of the principal due on such contracts.     The city claims that these payments were made, and should have been applied, upon the principal due on the contracts, and then invokes the rule that, when interest is recoverable merely as damages, an action cannot be maintained for its recovery after payment of the principal.     The trial court, however, held that these orders were simply payments on account, and applied them, under the rule of partial payments—First, to the payment of the interest then due, and, second, to the reduction of the principal.

1. The court was fully justified by the evidence in treating these orders as general payments on account.     The facts as disclosed by the evidence were identical with those in Moran v. City, supra.     The only distinction suggested by counsel is that in that case, after applying all the payments, there was still a balance due on the principal, while in this case, as to two of the contracts, the payments were equal to the amount of the principal.     That fact is an item of evidence which might have a bearing upon the question whether these payments were in fact specially made and specially received in extinguishment of principal, but it is not at all controlling or decisive.     Whether payments were made and received generally on account, or whether they were specially made and received in extinguishment of the principal, is usually a question of fact, and not of law; but there was no evidence in this case that required, even assuming that it would have justified, a finding that these payments

were specially made and received for the latter purpose.    This disposes of the city's appeal.

2. The gist of plaintiff's appeal is that the court erred in holding that he was not entitled to interest until the expiration of $4\frac{1}{2}$ months after he completed his contracts, on November 15.    He does not object to that as an unreasonable length of time in which to make and collect the assessments, if the city was entitled to such time after the completion of his contract in which to do so, and before he was entitled to demand his pay.    But his contentions are (1) that, by the terms of his contracts, his money was due and payable when the work was completed and accepted, and (2) that, under the provisions of the city charter, it was the duty of the board of public works to make monthly assessments for that purpose while the work was in progress; and, in support of the second proposition, he cites Sp. Laws 1887, c. 7, subc. 7, tit. 4, § 6 (page 368).

The contracts nowhere provide that the money shall be due and payable when the work is completed.    They provide that it shall be payable only out of the proceeds of the assessments made for that purpose.    In the Moran case the amount of the work to be done and the price to be paid therefor were definitely determined and fixed when the contract was made; and we held that, as the city had at its command the necessary legal machinery whereby it could have collected the assessment for the improvement by the time it was completed and accepted, it was therefore a fair construction of the contract that it assumed that the fund would be collected by that time.    But in the present case the amount of the work, or the cost thereof, was not determined or fixed by the contracts, and could not be determined or ascertained until the close of the sprinkling season, on November 15.    Hence, until that date arrived, the board of public works could not tell what assessments to make.    As plaintiff's contracts were to be paid out of the proceeds of these assessments, it is fairly implied that they were not payable until the city had a reasonable time after the completion of the work in which to make and collect the assessments.

This is so unless the plaintiff is correct in his contention that instead of waiting until the work was completed in order to ascertain the entire cost, and then making one assessment for the whole, the board of public works was required to make monthly assessments.

69 M.—6

It would be very remarkable if the charter requires the city to make six or seven distinct assessments on the same property to pay for street sprinkling for a single season. But conceding, without deciding, that the board has the power to do so, the very provision of the charter cited by counsel shows that it is optional with the board whether they will do so or not; and, if optional, then they were under no legal obligation to the plaintiff to do so.

The result is that in each appeal the order appealed from is affirmed.