[No. 2222.]

WEAVER ET AL. v. THE CANON SEWER COMPANY.

1. **Cities and Towns—Franchises—Sewers—Statutory Construction.**

   Section 4403, subdivision 10, Mills' Ann. Stats., authorizing cities and towns to construct sewers, regulate their use and to make special assessments against adjacent lots and lands for the purpose of such construction, limits the powers of municipal corporations in relation to sewers to those expressed in said subdivision. An ordinance purporting to grant to a private person an exclusive right and privilege to construct and operate a system of sewers within the limits of a municipal corporation and to collect from all persons using the same a reasonable annual compensation for connecting therewith is absolutely void, and one constructing a sewer system under such ordinance cannot maintain an action against an inhabitant of the city for the use of the same.

2. **Cities and Towns—Sewers—Invalid Ordinance—Pleading—Evidence.**

   In an action by a sewer company against an inhabitant of a town to recover compensation for the use of its sewer system, where plaintiff's ownership was denied and plaintiff relied upon an ordinance as the source of its title, defendant could avail himself of the invalidity of the ordinance in defense without having specially pleaded the same.

*Appeal from the District Court of Fremont County.*

Messrs. WALDO & DAWSON, for appellant.

Mr. Jos. H. MAUPIN, for appellee.

THOMSON, J.

On the 8th day of December, 1885, the board of trustees of the town of Canon City adopted an ordinance purporting to grant to Lyman Robison, his associates, successors and assigns, for twenty years, the exclusive right and privilege to construct, operate and maintain a system of sewers within the corporate limits of the town, for the use of its inhabitants, and to collect and receive from all persons using the same a reasonable annual compensation for connecting

therewith, not exceeding $50 per year for one lot.
On the 8th day of April, 1891, Robison assigned
all his right and interest under the ordinance to
Edwin C. Gray; and, on the 5th day of May, 1891,
these were assigned by Gray to Mary H. Cross.  On
the 1st day of September, 1892, Robison and a num-
ber of others executed a deed transferring all the
rights, powers and interests acquired by them and
their predecessors and assigns, under the ordinance
to The Canon Sewer Company, a corporation.  Among
the names subscribed to the deed does not appear that
of Edwin C. Gray or Mary H. Cross.  On the 13th
day of April, 1899, The Canon Sewer Company
brought this suit against J. E. Weaver and E. D.
Bond, alleging that it was the owner of a sewer
system in Canon City; that the defendants were the
owners of a part of lot 10, in block 10, with the build-
ing thereon; that the building had, since January 1,
1896, been connected with the plaintiff's sewer
system; and that a reasonable compensation for their
use of the system was $7 per year.  Judgment for
$21 was demanded.

Except as to the incorporation of the plaintiff,
and the defendants' ownership of the ground and
building, the answer denied all the allegations of
the complaint.

On the assumption that the ordinance was ef-
fective, the evidence leaves us very much in the
dark respecting the plaintiff's title.  It certainly
did not succeed to the rights of Robison, for he
had previously transferred them; no relinquishment
from the person or persons holding his title was
shown; and the claim that the subscribers to the
deed were his associates seems a little shadowy.
Neither does it very clearly appear what sewer was
built pursuant to the ordinance.  It seems that a
sewer was constructed for the use of the penitentiary,

by the penitentiary authorities, from the penitentiary to the Arkansas River, over a right of way granted to them by the town, for the construction of which Robison and others furnished certain material, and with which they were allowed the privilege of making connections. This was known as the main sewer. It also appears that a sewer was constructed along the alley running through block 10, which discharged itself into the main sewer. With this sewer in the alley Robison had nothing to do; but it was the one with which the defendants had connected. It is not evident who was responsible for its existence; and we discover no facts upon which its ownership in the associates of Robison can with any certainty be predicated. The main sewer constructed by the penitentiary authorities, and this sewer in block 10, the history of which is somewhat obscure, seem to have constituted the entire sewer system to which the plaintiff claims title. From the disjointed and unsatisfactory evidence before us, we should find considerable difficulty in working out a judgment for the plaintiff, even if, otherwise, the way were clear to a recovery.

But aside from the doubtful character, in such respects, of the plaintiff's proofs, there is a fatal objection to its case. It relied upon the ordinance as the source of its title; but the grant which was attempted by the ordinance, was not within the power of the municipality. In the act concerning towns and cities, the powers of municipal corporations are enumerated and defined. Among other powers is that to construct sewers, regulate their use, and, for the purpose of their construction, to make special assessments against adjacent lots and lands.—Mills' Ann. Stats., sec. 4403, subdiv. 10.

With respect to the case before us, the limits of the powers of municipal corporations in relation to

sewers are defined in the foregoing subdivision. It
was said by Chief Justice Field in *Zottman v. San
Francisco,* 20 Calif. 96, that the rule is general, and
applies to the corporate authorities of all municipal
bodies, that where the mode in which their power on
any given subject can be exercised is prescribed by
the charter, the mode must be followed. This utter-
ance was referred to with approval by our own su-
preme court in *Keese v. Denver,* 10 Colo. 112, in
which case it was held that where the statute has pre-
scribed how the municipality may act, it has no power
to act in any other or different manner. The same
doctrine is announced by Judge Dillon, who says
further that the public powers or trusts devolved
by law or charter upon the council or governing body,
to be exercised by it when and in such manner as it
shall judge best, cannot be delegated to others.—1
Dillon Munc. Corp. § 96; see also 1 Beach Pub.
Corp. 542.

The statute to which we have referred empowers
municipal corporations to construct sewers, and to
regulate their use; and provides a method by which
the cost of their construction may be defrayed.
Ownership and control, except in the municipality,
would be inconsistent with its terms. The ordi-
nance in question undertook to convert the sewer
system of Canon City into private property, and
vest the power conferred by law upon the town au-
thorities, in individuals. It did more: it assumed
to confer a power upon those individuals which it did
not possess itself, namely, to charge and collect an-
nual rental for the use of the system. In the absence
of statutory authority, it was powerless to turn the
construction, maintenance and control of its sewers
over to private parties. Further, there is no pro-
vision by which it might compel the payment to it
by its citizens of compensation for the privilege of

using its sewers; and, even if it might delegate powers which it actually possessed, it could not create a power. What it did not have, it could not give. In our opinion the ordinance was an absolute nullity, and no right or interest of any kind was acquired under it.

But for the plaintiff it is said that the defense of the invalidity of the ordinance should have been specially pleaded. We cannot assent to the proposition. The plaintiff alleged ownership of the sewers. The denial of ownership rendered it incumbent upon the plaintiff to prove facts from which ownership would result. It compelled the plaintiff, in order to entitle it to a recovery, to establish its title. It sought to do this by introducing an ordinance which on its face was void, and from which no title could be deduced. Relying solely upon that ordinance as the source of its title, it failed in its proof. The denial of title involved a denial of all the elements of title; and while, if the ordinance had possessed apparent validity, and facts *aliunde* were relied upon to show its invalidity, it might have been necessary to plead them, yet being on its face no evidence of title, as against the denial it was without effect.—See *Israel v. Day,* 17 Colo. App. 200, 68 Pac. 122.

The judgment will be reversed and remanded with instruction to dismiss the suit.        *Reversed.*