MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY
v. FIREMEN'S INSURANCE COMPANY.[1]

Oct. 30, 1895.

Nos. 9552—(71).

**Amending Answer—New Defense.**

*Held,* upon the facts stated, that it was not error to refuse defendant leave to amend its answer by setting up a new defense.

**Assignments of Error not Urged in Brief.**

Certain assignments of error not considered, because not urged in the points and authorities of appellant. All assignments of error relied on must be urged in the printed brief or points and authorities. Counsel cannot omit to urge an assignment of error in his points and authorities, and yet be allowed to do so by oral argument. The points and authorities are for the benefit of the court, as well as of opposing counsel.

Appeal by defendant from a judgment of the district court for Hennepin county in favor of plaintiff for $9,123.78, entered in pursuance of the findings and order of Smith, J. Affirmed.

*George F. Harding* and *C. M. Hertig,* for appellant.
*Alfred H. Bright* and *M. B. Koon,* for respondent.

MITCHELL, J. Action on a policy of insurance against loss by fire on grain owned by plaintiff, or held by it in trust or on commission, or sold but not delivered, "while contained in their frame iron-clad, steam-power elevator building, situate on their dock at Gladstone, Michigan."

While defendant's counsel have made over 30 assignments of error, their entire brief of 85 pages is devoted to the discussion of the first two, which relate to the refusal of the trial court to allow the de-

---

[1] Reported in 64 N. W. 902.

fendant to amend its answer. The fire which destroyed the grain covered by the policy occurred November 29, 1891. Defendant was notified of the loss immediately after the fire. Proofs of loss were furnished to it on January 9, 1892. This action was commenced April 12, 1892, and issue joined June 21, 1892. The first application for leave to amend the answer was made February 10, 1894. The substance of the proposed amendment, briefly stated, was that, at the time the policy was issued, a feed mill was being operated in the elevator in which the grain was situated; also, that the elevator was not then in the actual possession of the plaintiff, but in that of other parties, who were operating it under contract with plaintiff, which facts were unknown to the defendant and concealed from it by plaintiff. This, it is claimed, constituted a breach of warranty, or of condition, which avoided the policy.

It would seem somewhat difficult to expand the words, "in their elevator building," into a warranty or condition that the building was or should remain in the actual possession of the plaintiff, or that it was, or should continue to be, used exclusively for elevator purposes, especially as the grain, and not the building, was the subject of the insurance. It is not claimed that either of these conditions existed at the date of the fire, for the building at that time was, and for some time prior had been, in the actual possession of the plaintiff, and used exclusively as an elevator. Hence, neither of the things complained of could have proximately contributed to the loss. Moreover, while the term "concealed" is applied in the answer, it is apparent, from the depositions used in support of defendant's motion, that all that plaintiff could be charged with is that it failed to communicate these facts to the defendant. There is nothing to indicate that this was done intentionally or fraudulently, or that defendant ever knew that these facts were material to the risk. Therefore, conceding that the proposed amendment would have constituted a defense, it was not one that would commend itself to the special favor of the court; and while it is true that all defenses are equally good in law, yet we think a court may, to a certain extent, take into account the nature of the defense in determining, in the exercise of its judicial discretion, whether it should grant leave to amend a pleading by setting it up.

The substance of the excuses which defendant gives for not sooner discovering the facts is that it assumed that the language of the

policy meant what it now claims it does; that it knew that other insurance companies had issued policies on the same property as "an elevator risk," and therefore it was led to believe that it was all right; that after the fire it sent its adjuster to Green Bay, and that he did not discover the facts, and consequently did not communicate them to the home office, and therefore it made no further investigation, and remained in ignorance of the facts until they accidentally came to its knowledge in the examination of the witness in the case, whose deposition was being taken.    It is also to be observed that the facts were not something within the exclusive knowledge or possession of the plaintiff, but were presumably of sufficient publicity to enable any one to ascertain them by reasonable investigation. The mere statement of these facts is enough to show that there was no abuse of discretion in refusing the application to amend.

2. Defendant's counsel not having urged in his points and authorities any of his other assignments of error, plaintiff's counsel assumed, as he had a right to do, that they were abandoned, and hence did not discuss them in his brief.    Upon the argument of the case, counsel for defendant, having occupied most of the time allotted to him in discussing the first and second assignments of error, was, against the objection of plaintiff's counsel, permitted by the court, improvidently as we now think, to urge, in the brief time remaining, the twenty-ninth and thirtieth assignments of error, which relate, directly or indirectly, to the question of contributing insurance.    Owing to the brevity of time, about all the information we obtained was that defendant claimed that the Home Insurance Company's policy which was the subject of litigation in Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Home Ins. Co., 55 Minn. 236, 56 N. W. 815, was "contributing insurance."    But as to what positions counsel take in support of this proposition we are left entirely in the dark, except so far as we may conjecture from the citation of a few authorities handed up to the court after the argument closed.

The new field of investigation thus sought to be opened is quite a large one.    Among the questions that may arise are whether the policy, which, we have held, was merely for the benefit of plaintiff to the extent of its interest and liability as carrier and warehouseman, is contributing insurance at all, and, if so, on whom was the burden of proof to show the extent of that interest; also, whether the

exemption in plaintiff's bills of lading against loss by fire not caused by its negligence was valid, and, in determining that question, whether the law of Minnesota or the law of Michigan governed, and, if the latter, whether the statute of Michigan offered in evidence applied to the facts of this case.   It would also be necessary to examine a record of nearly 300 pages to ascertain what was the evidence bearing on these questions.   We would have to do this without the aid of any briefs citing either page or folio.   Duty does not require us to assume any such task.   We are entitled to the aid of counsel, and if they desire us to decide any question, they must make it in their points and authorities, and inform us in that way what they urge in support of their positions.   The rule requiring this to be done is for the benefit of the court as well as of opposing counsel.   If any impression has gone abroad that counsel may omit to urge an assignment of error in his points and authorities, and yet urge it in his oral argument, it is time that it be removed.   We therefore decline to consider any other assignments of error than those urged in the brief of counsel.

Judgment affirmed.