Anthonette LENER, et al., Appellants,

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Respondent.**

No. 47715.

Supreme Court of Minnesota.

Jan. 27, 1978.

Schway & Gotlieb, Carl D. Schway, and Jerome A. Gotlieb, St. Paul, for appellants.

Geraghty, O'Loughlin & Kenney and Robert M. Mahoney, St. Paul, for respondent.

Heard before PETERSON, YETKA, and IVERSON, JJ., and considered and decided by the court en banc.

IRVING C. IVERSON, Justice.*

Action was brought in district court seeking a determination of coverage under the uninsured motorist provisions of an automobile insurance policy. Pursuant to a stipulation, the issue was resolved by the court rather than by arbitration.

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

The facts essential to the resolution of this case are uncontroverted. The matter was submitted to the trial court without testimony. Based on affidavits, pleadings, and the parties' respective briefs, the court made its findings of fact, conclusions of law, and order for judgment, and ruled, applying Wisconsin law, that the insurance policy did not provide uninsured motorist coverage to plaintiffs because there was no physical contact, as required by the policy, between their vehicle and the other unknown, hit-and-run vehicle. Plaintiffs appealed from the judgment. We affirm.

On June 3, 1974, plaintiff Anthonette Lener was involved in a one-car accident in Grantsburg, Wisconsin. At the time of the accident, she was operating a 1970 Dodge Charger owned by her husband, Lynn Lener, who at that time was her fiance.

Plaintiffs allege that the vehicle driven by Anthonette Lener was forced off the road by an unknown motorcycle driver who crossed directly in front of her. As a result, she lost control of the automobile and went into a ditch by the side of the road, causing the car to roll over many times. No physical contact was made between the automobile and the motorcycle, and the identity of the motorcycle driver remains unknown. No witness observed the accident.

Plaintiff Anthonette Lener sustained personal injuries as a result of the accident.

At the time of the accident, the 1970 Dodge Charger was insured by Heritage Mutual Insurance Company. Heritage denied·coverage under its policy because there was no physical contact with the "hit-and-run" vehicle, as required by its contract of insurance. Plaintiffs did not pursue their claim against Heritage.

Instead, plaintiffs turned to defendant, St. Paul Fire and Marine Insurance Company, seeking uninsured motorist coverage. At the time of the accident Anthonette Lener was living with her parents in Siren, Wisconsin. Her father, David Doskey, owned two automobiles which were insured by defendant. Defendant admitted that Anthonette Lener was an insured under that policy, but denied that it was liable to pay plaintiffs' claims under the uninsured motorist provision of the policy on five separate grounds.[1]

The trial court, in its order for judgment, ruled that without physical contact with the unknown vehicle, no coverage could be provided. The court did not discuss the remaining defenses asserted by defendant.

The issue before the court is whether the automobile insurance policy issued by defendant provides uninsured motorist coverage to plaintiffs for an accident which was allegedly caused by an unknown motorcycle driver without any physical contact between the accident vehicles.

In determining whether the insurance policy provides uninsured motorist coverage benefits to plaintiffs, an initial determination must be made as to whether Wisconsin or Minnesota law applies.

The trial court, in its memorandum accompanying its findings of fact, conclusions of law, and order for judgment, found that Wisconsin law applied. Plaintiffs do not contest this ruling on appeal. Where a party fails to urge an assignment of error or contest a trial court order in his brief on appeal, the point is deemed waived by him, and the trial court's rulings will stand. *White v. Collins*, 90 Minn. 165, 95 N.W. 765 (1903); *Dennis v. Pabst Brewing Co.*, 80 Minn. 15, 82 N.W. 978 (1900). See,

---

1. In a memorandum of law submitted to the trial court, defendant raised the following defenses:

"1. There is no evidence that another vehicle was involved in the accident.

"2. If another motor vehicle was involved in the accident, the plaintiffs are not *legally entitled* to recover damages.

"3. If there was another vehicle involved in the accident, there was no *physical contact* between that motor vehicle and the vehicle Anthonette Lener was occupying.

"4. The defendant was not notified of the accident within 30 days of its occurrence, as required by the policy.

"5. Any liability that the defendant may have to the plaintiffs would only be in excess of any insurance policy covering the accident vehicle."

also, *Haugen v. Swanson*, 222 Minn. 203, 23 N.W.2d 535 (1946). Thus, in determining the issue in this case, reference to Wisconsin case and statutory law is required.[2]

■ The issue raised by plaintiffs is one of interpretation and construction of the insurance policy. The insurance contract ostensibly requires physical contact between the insured's vehicle and the "hit-and-run" vehicle before any benefits under the uninsured motorist provisions of the policy become available.[3] This "physical contact" requirement is imposed in a hit-and-run situation where the operator or owner of the vehicle is unknown in order to protect the insurance company from possible fraud.

Plaintiffs maintain, however, that the policy includes two definitions of "uninsured automobile"—§ (b), the hit-and-run section, which requires physical contact between the accident vehicles; and § (a), which defines an uninsured motor vehicle as one with respect to which there is "no * * insurance policy applicable at the time of the accident * * *." Plaintiffs argue that one definition does not limit or vary the terms of the other.

Because, according to plaintiffs, the two sections are unrelated, they argue that § (a) provides coverage even though § (b) clearly does not. They argue that the word "applicable" as found in § (a) has been defined to mean "capable of being applied." *Whitney v. American Fidelity Co.*, 350 Mass. 542, 544, 215 N.E.2d 767, 768 (1969). Plaintiffs then reason that because it is not known whether the unidentified motorcycle was insured there is no insurance "capable of being applied." Thus, the uninsured motorist provisions of this policy, under the definition of § (a), should apply.

To support this argument, plaintiffs cite only the dissenting opinion in *Buckeye Union Ins. Co. v. Cooperman*, 33 Ohio App.2d 152, 62 Ohio O.2d 248, 293 N.E.2d 293 (1972). In that case, which involved similar

**2.** Our decision is based solely on Wisconsin law. The Minnesota statute, Minn.St. 1971, § 65B.22, subd. 3, was not briefed or argued on appeal. We, of course, intimate no opinion as to the result if decided under present Minnesota law.

**3.** The insurance policy provides in part:
"PART IV—PROTECTION AGAINST
UNINSURED MOTORISTS
\* \* \* \* \* \*
"Coverage J—Uninsured Motorists (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such *uninsured motor vehicle*; \* \* \*.
\* \* \* \* \* \*
" 'uninsured motor vehicle' includes a trailer of any type and means:
"(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, *no bodily injury liability bond or insurance policy applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or
"(b) a hit-and-run automobile; but the term 'uninsured automobile' shall not include:
"(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative,
"(2) an automobile or trailer owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,
"(3) an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing,
"(4) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle, or
"(5) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.
" 'hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of *physical contact* of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run automobile'; \* \* \*." (Italics supplied.)

factual circumstances and contained insurance policy language essentially identical to the policy language in the instant case, the dissenting judge stated:

"* * * The policy includes two definitions of 'uninsured automobile.' The second is 'hit-and-run automobile'; the first is stated as being an automobile with respect to which there is 'no bodily injury liability bond or insurance policy *applicable* at the time of the accident with respect to any person or organization legally responsible for the use of such automobile.' The inclusion of hit-and-run automobiles does not limit or vary the general definition of uninsured automobile contained in the policy. * *

\* \* \* \* \* \*

"* * * Applicable means capable of being applied. * * * Where the identity of the operator of a motor vehicle cannot be ascertained, any liability insurance policy which may exist is not capable of being applied.

"I would, therefore, hold that, under the circumstances of this case, there was no bodily injury liability insurance policy *applicable* at the time of the accident with respect to the person claimed to be legally responsible for the use of the unknown automobile involved. Thus, such unknown automobile is an 'uninsured automobile' within the policy definition, even though it was not a hit-and-run automobile. In my opinion, any contrary conclusion involves a rewriting of the policy definition to substitute 'in effect' or words of similar import, for the word 'applicable' as used in the policy." (Italics supplied in part.) 33 Ohio App.2d 162, 62 Ohio O.2d 254, 293 N.E.2d 299.

Finally, plaintiffs argue that any ambiguity or uncertainty in the meaning of the language in the insurance policy is to be construed liberally in favor of the insured, and every reasonable doubt as to the language should be resolved in their favor. *Donarski v. Lardy,* 251 Minn. 358, 88 N.W.2d 7 (1958).

Plaintiffs' interpretation of the policy is clearly erroneous. The policy definition of an uninsured motor vehicle is clear and unambiguous.

Although there are no Wisconsin cases directly on point, there are two cases from other jurisdictions dealing with the issue involved here. In *Weingarten v. Allstate Insurance Co.,* 169 Conn. 502, 363 A.2d 1055 (1975); and *Lenngren v. Travelers Ind. Co.,* 26 Misc.2d 1084, 203 N.Y.S.2d 136 (1960), the insurance policies in question were similar to the policy involved here, except that they had no provision for a hit-and-run automobile. In *Weingarten,* the court, citing *Lenngren* with approval, stated:

"* * * The plaintiff contends that the phrase in the policy 'no bodily injury liability insurance applicable at the time of accident' covers the unidentified motorist situation. Further, the plaintiff argues that this phrase creates an ambiguity in the meaning of the terms used in the insurance policy which must be resolved in favor of the insured. An identical argument was raised in the case of *Lenngren v. Travelers Indemnity Co.,* 26 Misc.2d 1084, 203 N.Y.S.2d 136, aff'd, 20 A.D.2d 850, 249 N.Y.S.2d 400. In that case the Court responded by saying: 'The difficulty with the plaintiff's position is that it presupposes an ambiguity that requires construction. I find none. I find that the policy does not, in express terms, include a hit-and-run automobile in its definition of an uninsured automobile, and no intent to do so can be read into the policy by any reasonable interpretation of the language used. Nor is there any basis for the assumption that the policy was intended to include hit-and-run automobiles in addition to uninsured automobiles . . . . To attempt to read any such coverage into the policy would be to torture and twist the language from its plain meaning. I find the language of the policy and the indorsement to be clear and unambiguous permitting of no such construction.'" 160 Conn. 508, 363 A.2d 1059.

Furthermore, the policy definition of an uninsured motor vehicle under § (a) is clearly modified and affected by § (b). The sections must be read in conjunction with one another. If § (a) were construed as plaintiffs argue it should be construed, § (b) would be wholly superfluous and without meaning. In interpreting an insurance contract, the general rule is that some meaning should be given to each sentence, phrase, and word when this may be fairly and properly done. *Waters Motor Co. v. Grain Dealers Mutual Ins. Co.*, 12 Wis.2d 231, 107 N.W.2d 129 (1961); *Lontkowski v. Ignarski*, 6 Wis.2d 561, 95 N.W.2d 230 (1959). In *Inter-Insurance Exch. v. Westchester Fire Ins. Co.*, 25 Wis.2d 100, 106, 130 N.W.2d 185, 188, the court, citing a Minnesota case with approval, stated:

"A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent. *Wyatt v. Wyatt* (1953), 239 Minn. 434, 58 N.W.2d 873."

Also, "[i]n construing a particular provision in a[n] [insurance] policy, * * * the entire policy, should be considered in order that the true intent may be ascertained." *Tischendorf v. Lynn Mutual Fire Ins. Co.*, 190 Wis. 33, 41, 208 N.W. 917, 920 (1926). The courts should not isolate words or sections of a contract in interpreting its meaning, when to do so will distort the overall intention of the parties. *Home Mut. Ins. Co. v. Insurance Co. of N.A.*, 20 Wis.2d 48, 121 N.W.2d 275 (1963).

Here, plaintiffs' interpretation of the policy is distorted by their concentration on the word *"applicable"* in § (a) and consequent failure to look to the contract as a whole. Section (a) applies to those situations where the owner or operator of the motor vehicle who causes the accident is identified. Because the owner or operator is identified, the insured is able to establish that the vehicle is uninsured and that he is therefore entitled to uninsured motorist coverage. Section (b) applies to those situations where the owner or operator of the motor vehicle is not identified—a "hit-and-run" situation. In a hit-and-run situation the insured is unable to establish that the motor vehicle was uninsured, as required by § (a). However, coverage is extended under § (b) if the insured meets certain reporting requirements and if there is physical contact with the unidentified vehicle. Any other interpretation strains the meaning and ignores the clear intent of the policy taken as a whole.

Finally, in *Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis.2d 45, 170 N.W.2d 813 (1969) (which did not involve the identical interpretational issue) the court held that the provisions of an insurance policy, identical to those under consideration here, did not violate either Wisconsin statutes or public policy by requiring a showing of physical contact with an unknown, "hit-and-run" vehicle. The court concluded that the language of the policy was unambiguous and stated the clear intent of the parties to require physical contact between the accident vehicles before insurance coverage will be allowed in a hit-and-run, unknown-tortfeasor situation.

The provisions of the policy now under consideration are clear and unambiguous. Plaintiffs' argument that they should receive coverage under § (a) of this contract, even though § (b) clearly excludes coverage, is without merit.

Wisconsin law is applied in this case. The Wisconsin court has already ruled, at least by implication, that the language in this policy is clear. To interpret the policy in the manner plaintiffs suggest would strain the true meaning and intent of the contract by failing to consider the policy as a whole.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.